UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RENATE PENNA,

      Plaintiff,

v.                                  CASE No.  8:14-CV-1-T-TGW

CAROLYN W. COLVIN,  Acting
Commissioner of Social Security,

      Defendant.

_____

O R D E R

      The plaintiff in this case seeks judicial review of the denial of her claims for Social Security disability benefits and supplemental security income payments.[1]  Because the decision of the Commissioner of Social Security is supported by substantial evidence and does not contain reversible error, the decision will be affirmed.

I.

      The plaintiff, who was thirty-nine years old at the time of the administrative hearing and who has a general equivalency diploma and some

_____

[1]The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 16).

college, has worked as a home health care worker and laborer (Tr. 35, 42, 171).   She filed claims for Social Security disability benefits and supplemental security income payments, alleging she became disabled due to depression, anxiety, bipolar disorder, ADHD (attention deficit hyperactivity disorder), insomnia, thyroid problems, psoriasis, chronic fibromyalgia, interstitial cystitis, and OCD (obsessive compulsive disorder) (Tr. 280). The claims were denied initially and upon reconsideration.

The plaintiff, at her request, then received a de novo hearing before an administrative law judge. The law judge found that the plaintiff has severe impairments of osteoarthritis, fibromyalgia, attention deficit hyperactivity disorder, depression, anxiety, and a bipolar disorder (Tr. 10).[2] In light of those impairments, the law judge found further (Tr. 12-13):

> [T]he claimant retains the residual functional capacity to perform a wide range of light work. She can occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand, walk, and/or sit for about six hours in an eight-hour workday, with normal breaks; and occasionally

---

[2]The law judge also considered the plaintiff's history of recurrent urinary tract infections (UTIs), psoriasis, irritable bowel syndrome, and hypothyroidism, but found they were nonsevere impairments because the evidence did not establish that they caused the plaintiff more than minimal difficulties with her ability to perform basic work activities (Tr. 11).

stoop and crouch.  The claimant has no pushing and/or pulling, manipulative, visual, or communicative limitations.  She should avoid concentrated exposure to wetness and humidity.  The claimant can hear, understand, remember and carry out simple, routine work instructions and can interact appropriately with coworkers and supervisors, but should avoid contact with the general public.  She can adapt to minor, routine changes, but not unfamiliar circumstances, and can be aware of work hazards and avoid them.

The law judge concluded that, with these limitations, the plaintiff was unable to perform any past relevant work (Tr. 20).  However, based on the testimony of a vocational expert, the law judge determined that the plaintiff could perform other jobs that exist in significant numbers in the national economy, such as small products assembler, agricultural produce sorter, and office helper (Tr. 21).  Accordingly, he decided that the plaintiff was not disabled (Tr. 22).  The Appeals Council let the decision of the law judge stand as the final decision of the defendant.

## II.

In order to be entitled to Social Security disability benefits and supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical

or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment," under the terms of the Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3), 1382c(a)(3)(D).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

## III.

The plaintiff challenges the decision on three grounds, none of which is meritorious. She argues that the law judge (1) failed properly to give controlling weight to the opinion of her treating physician; (2) did not

consider the effects of fibromyalgia; and (3) ignored the diagnosis of interstitial cystitis (Doc. 17, pp. 17, 22, 24).

A. The plaintiff argues first that the law judge erred by not giving proper weight to the opinion of her treating psychiatrist, Dr. Takkallapelli ("T.D.") Rao (id., pp. 18-22). That contention is baseless because the law judge stated good cause for discounting that opinion.

Dr. Rao, a psychiatrist at Winter Haven Hospital's Behavioral Health Division, began treating the plaintiff in January 2009 (see Tr. 784). Dr. Rao opined in several Medical Verification forms that the plaintiff was unable to work due to bipolar disorder (Tr. 779, 786, 790, 792, 902).[3]

Opinions from treating physicians are entitled to substantial or considerable weight unless there is good cause for not according them such weight. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). Good cause exists when the treating physician's opinion is not bolstered by the evidence, the evidence supports a contrary finding, or the opinion is

---

[3]In a Medical Verification form dated November 10, 2009, Dr. Rao also attributed the plaintiff's mental disability to attention deficit disorder (Tr. 786).

conclusory or inconsistent with the physician's own medical records. <u>Lewis</u> v. <u>Callahan</u>, 125 F.3d 1436, 1440 (11ᵗʰ Cir. 1997).

The law judge acknowledged Dr. Rao's opinion that the plaintiff was unable to work (Tr. 17, 18). However, he declined to give Dr. Rao's opinion controlling weight. The law judge gave the following thorough explanation for that finding (Tr. 17-19):

> As for the opinion evidence, I have considered the opinions of treating psychiatrist T. D. Rao, MD. On May 8, 2009, Dr. Rao opined that the claimant was unable to work due to a depressed-type, severe bipolar I disorder with panic episodes (Exhibits 10F and 22F). However, mental status examination on that same day revealed that the claimant was well oriented and she had normal speech and cognition [and] no suicidal/homicidal ideations. In addition, at the April 10, 2009 follow-up appointment, Dr. Rao assigned th[e] claimant a GAF score of 64, which the undersigned notes reflects only mild symptoms according to the DSM-IV-TR.
>
> On September 17, 2009, Dr. Rao opined that the claimant was unable to work due to a symptomatic bipolar disorder (Exhibit 22F). However, in August 2009, he assigned the claimant a GAF score of 60, which the undersigned notes is right on the cusp of moderate and mild symptoms according to the DSM-IV-TR.

On November 10, 2009, Dr. Rao assigned the claimant a GAF score of 45, which the undersigned notes reflects serious symptoms according to the DSM-IV-TR, and again opined that the claimant was unable to work (Exhibit 22F). However, mental status examination on that same day revealed that the claimant was oriented, with normal speech and cognition and no suicidal/homicidal ideations. In addition, notations indicated that the claimant needed to resume medications, which would indicate that the claimant had not been taking medications. Further, from January to November 2010, the claimant was mostly assigned GAF scores ranging from 55-60, which the undersigned notes reflects only moderate symptoms according to the DSM-IV-TR. Moreover, at follow-up on May 12, 2010, the claimant reported that she had gone to New York over the weekend to see friends. Also, on October 22, 2010, the claimant stated that she had not been depressed and was doing better (Exhibit 22F).

On March 22, 2010, Dr. Rao opined that the claimant could not work in any setting due to disabling depression that was not responding (Exhibit 22F). However, on that same day, he indicated a partial response to medication and assigned the claimant a GAF score of 55, as well as a GAF score of 60 the month prior in February 2010. The undersigned notes that these GAF scores do not support an inability to work, as they reflect no more than moderate symptoms according to the DSM-IV-TR.

On January 13, 2011 (not 2010), Dr. Rao opined that the claimant was unable to work in any gainful employment for the next few years because her bipolar II disorder with rapid cycling was poorly responsive to treatment (Exhibit 27F). However, Dr. Rao's progress notes indicated a partial response to medications and he assigned the claimant a GAF score of 50, which the undersigned notes is right on the cusp of serious and moderate symptoms according to the DSM-IV-TR. Then, on January 18, 2011, Dr. Rao assigned the claimant a GAF score of 60, which the undersigned notes is right on the cusp of moderate and mild symptoms. Also, from March 2011 to January 2012, the claimant was assigned mostly GAF scores of 60, which the undersigned notes are right on the cusp of moderate to mild symptoms according to the DSM-IV-TR.

The undersigned notes that the GAF scale is just one tool used by clinicians to develop the clinical picture and it cannot be used in isolation from the rest of the evidence to make a disability decision. The undersigned also notes the argument by the claimant's representative at Exhibit 34E that Dr. Rao's opinions should be accorded controlling weight.

However, although Dr. Rao had a treating relationship with the claimant, the undersigned does not accord Dr. Rao's opinions controlling weight for the reasons explained above. Specifically, Dr. Rao's opinions are somewhat internally inconsistent and are therefore rendered less than persuasive. Dr. Rao apparently relied

quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported. Yet, as explained elsewhere in the decision, there exist good reasons for questioning the reliability of the claimant's subjective complaints. Also, Dr. Rao's own reports fail to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact disabled and the doctor did not specifically address this weakness. In addition, Dr. Rao's opinions are not well supported by the other evidence of record as a whole, which he did not have the benefit of reviewing. Further, in face-to-face interviews with the claimant on November 12, 2008 and November 10, 2010, Social Security field office employees noted that the claimant had no difficulty with understanding, coherency, concentrating, talking, [and] answering all questions ... (Exhibits 2E and 17E). Plus, on November 10, 2010, the claimant was also noted to be polite, alert, and well prepared for the interview and she was able to answer all questions (Exhibit 17E). Moreover, the claimant admitted that she is attending general management classes every other Monday from 6:00-8:00 pm.

This explanation clearly provides good cause for not giving controlling weight given to Dr. Rao's opinion. See Lewis v. Callahan, supra. It is also noted that Dr. Rao's opinion is conclusory, as it does not meaningfully explain the basis for his opinion. Id.; Johns v. Bowen, 821 F.2d

551, 555 (11th Cir. 1987); Lanier v. Commissioner of Social Security, 252

Fed. Appx. 311, 314 (11th Cir. 2007); see, e.g., Brown v. Commissioner of

Social Security, 442 Fed. Appx. 507, 512 (11th Cir. 2011) (the law judge

stated good cause to not give controlling weight to the treating physician's

opinions stated in forms which did not reference his treatment records or

adequately explain his opinions). In fact, the opinion does not even mention

the basic areas of activities of daily living, social functioning, concentration,

persistence or pace, and episodes of decompensation.   See 20 C.F.R.

404.1520a(c)(3), 416.920a(c)(3). Moreover, the opinion that the plaintiff "is

unable to work" is not even a medical opinion, but rather opines on a

vocational issue reserved to the Commissioner.   20 C.F.R. 404.1527(d),

416.927(d); Lanier v. Commissioner of Social Security, supra, 252 Fed.

Appx. 314.

The plaintiff argues that "[n]one of the [law judge's] reasons are

adequate for rejecting the treating physician's opinion in this case" (Doc. 17,

pp. 18-19).   In this regard, the plaintiff contends first that "[n]othing in this

record suggests that Dr. Rao relied more heavily on [the plaintiff's] subjective

complaints than on Dr. Rao's own clinical observations" (id., p. 19).

The law judge's conclusion that Dr. Rao relied heavily on the plaintiff's subjective symptoms in opining that she was unable to work was reasonable, considering that neither Dr. Rao's mental status evaluations nor his assessments of the plaintiff's GAF scores indicate total mental disability (see Tr. 14-19). Thus, although the plaintiff had a depressed or anxious mood, Dr. Rao regularly affirmed that there was: (1) no clinically significant findings with regard to the plaintiff's appearance; (2) no clinically significant findings regarding the plaintiff's speech, language, or orientation; (3) no evidence of suicidal or homicidal ideation; and (4) no clinically significant findings of cognitive abnormalities and no psychosis (see, e.g., Tr. 770, 771, 772, 776, 777, 781, 782, 783, 784, 791, 793, 991). See 20 C.F.R. 404.1527(c)(3), 416.927(c)(3) (an opinion supported by medical signs is given greater weight).

Furthermore, as indicated, many of Dr. Rao's treatment notes include his assignment of a GAF score. The GAF scale "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders, (DSM-IV-TR) (4th ed., Text Revision), p. 34. In this

-12-

connection, the law judge noted that Dr. Rao assigned the plaintiff GAF scores mostly between 55-60, which reflects moderate, not disabling, mental symptoms (Tr. 15, 16; see, e.g., GAF of 60 (Tr. 773, 774, 775, 780, 781, 783, 791, 991), GAF of 55 (Tr. 771, 772, 778), GAF of 58 (Tr. 777)).[4] Dr. Rao also assigned the plaintiff GAF scores of 64 and 65 (Tr. 796, 980), which indicate only mild mental symptoms.

In sum, since Dr. Rao's clinical findings did not show disabling mental symptoms, and Dr. Rao does not meaningfully explain in the Medical Verification Forms the basis for his opinion, it was reasonable for the law judge to infer that Dr. Rao's opinion was based heavily on the plaintiff's subjective report of symptoms. Significantly, the law judge found that the plaintiff's allegations of disabling symptoms and limitations were not fully

_____

[4]A rating of 51-60 reflects "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers") Diagnostic and Statistical Manual of Mental Disorders, (DSM-IV-TR) (4th ed., Text Revision), p. 34.

Notably, the assessment of a GAF score of 50, which the law judge noted was at the cusp of the range (41-50) of serious symptoms, does not show an individual is unable to work. See Hillman v. Barnhart, 48 Fed. Appx. 26, 30 n.1 (3d Cir. 2002)(a GAF score of "50 ... indicates [that a plaintiff] could perform some substantial gainful activity"); see also Jones v. Astrue, 494 F.Supp.2d 1284, 1288 (N.D. Ala. 2007); Speagle v. Astrue, 2010 WL 750341 at *10 (M.D. Fla.).

credible, and that determination is not challenged. Consequently, the law judge could reasonably discount the weight given to Dr. Rao's opinion because it is undermined by his reliance on the plaintiff's discredited subjective complaints.

The plaintiff argues next that "it is not clear what the ALJ is referring to in his finding that Dr. Rao's opinion was somewhat internally inconsistent" (Doc. 17, pp. 19-20). This contention is meritless because, as quoted above, the law judge clearly specified that Dr. Rao's opinion that the plaintiff was unable to work was inconsistent with Dr. Rao's mental status evaluations and the GAF scores he assigned to the plaintiff. Thus, among other examples, the law judge stated (Tr. 17):

> On May 8, 2009, Dr. Rao opined that the claimant was unable to work due to a depressed-type severe bipolar I disorder with panic episodes (Exhibits 10F and 22F). However, mental status examination on that same day revealed that the claimant was well oriented and she had normal speech and cognition and no suicidal/homicidal ideations. In addition, at the April 10, 2009 follow-up appointment, Dr. Rao assigned th[e] claimant a GAF score of 64, which the undersigned notes reflects only mild symptoms according to the DSM-IV-TR.

On September 17, 2009, Dr. Rao opined that the claimant was unable to work due to a symptomatic bipolar disorder (Exhibit 22F). However, in August 2009, he assigned the claimant a GAF score of 60, which the undersigned notes is right on the cusp of moderate and mild symptoms according to the DSM-IV-TR.

On November 10, 2009, Dr. Rao assigned the claimant a GAF score of 45, which the undersigned notes reflects serious symptoms according to the DSM-IV-TR, and again opined that the claimant was unable to work (Exhibit 22F). However, mental status examination on that same day revealed that the claimant was oriented, with normal speech and cognition and no suicidal/homicidal ideations.

The plaintiff, implicitly acknowledging that her GAF scores do not support her allegations of mental disability, contends that the law judge should not have relied upon her GAF scores. In this regard, she points out that GAF scores were omitted from the current version of the <u>Diagnostic and Statistical Manual of Mental Disorders</u> (Doc. 17, p. 20).

However, it was certainly reasonable for the law judge to consider the GAF scores assigned by Dr. Rao in considering the weight to give to Dr. Rao's opinion that the plaintiff was totally disabled. In this respect, the law judge was simply concluding that the GAF scores assigned

by Dr. Rao were inconsistent with his opinion of disabled. That conclusion was clearly reasonable.

Moreover, the law judge acknowledged in the decision that GAF scores are not dispositive of disability, and are "just one tool used by clinicians to develop the clinical picture" which "cannot be used in isolation from the rest of the evidence to make a disability decision" (Tr. 18). Further, the decision shows that the law judge did not place undue reliance on the GAF scores. Thus, among other circumstances, the law judge considered the results of mental status examinations by several physicians, including Dr. Rao, that did not reflect disabling mental symptoms; the plaintiff's daily activities that were inconsistent with mental disability; her non-compliance with medications; and her misuse of alcohol (Tr. 14, 15). Therefore, the plaintiff has not shown the law judge improperly relied upon the GAF scores. In all events, the law judge certainly did not err in considering Dr. Rao's GAF scores in assessing Dr. Rao's opinion.

The plaintiff also argues that her higher GAF scores do not "indicat[e] that Dr. Rao's opinion [of disability] was not valid, [as] the GAF scores could be an indication of the rapid cycling and bipolar nature of [the

plaintiff's] problems" (Doc. 17, p. 20). However, this contention does not answer the law judge's point that, on at least two occasions, Dr. Rao assigned to the plaintiff GAF scores inconsistent with disability on the same day he opined that the plaintiff was unable to work (see Tr. 17-18). Furthermore, Dr. Rao's treatment notes overall do not show a greatly fluctuating mental state, as the majority of the GAF scores remained fairly steady in the range of 50 to 60 (see id.), which indicates moderate mental symptoms. Additionally, as indicated, despite the plaintiff's subjective complaints of mental symptoms, the mental status examinations regularly reflected that the plaintiff's cognitive functioning remained intact; her thought process, speech and appearance were normal; and there was an absence of psychosis, and suicidal or homicidal thoughts.

The plaintiff also argues that the law judge's finding that "Dr. Rao's report failed to reveal the type of significant clinical and laboratory abnormalities one would expect is not warranted" (Doc. 17, p. 20). In this connection, the plaintiff emphasizes her mood abnormalities, such as anxiety and racing thoughts (id.). However, as discussed above, even when the treating physician's evaluations reflected a depressed or anxious mood, other

significant aspects of the plaintiff's mental status examination were regularly normal, and her GAF scores were not indicative of mental incapacity (Tr. 16-19). Therefore, the law judge's finding that Dr. Rao's treatment records do not reflect the abnormalities in mental functioning that would be expected of a mentally disabled claimant is supported by substantial evidence. The plaintiff's citations to abnormalities of mood do not compel the contrary conclusion. See Adefemi v. Ashcroft, supra (findings of fact may be reversed only when the record compels a reversal); Graham v. Bowen, 790 F.2d 1572, 1575 (11th Cir. 1986) ("The weighing of the evidence is a function of the factfinder, not of the district court.").

The plaintiff also disputes the law judge's finding that Dr. Rao's opinion of disability is not supported by the record as a whole (Doc. 17, p. 21). However, the law judge cites to ample evidence showing that the overall record was not consistent with mental disability. Thus, the law judge mentions assessments from other physicians, who variously opined that the plaintiff was pleasant and cooperative, with no speech or memory impairments, and that she was oriented x3, with intact memory, judgment and insight (see Tr. 15-17). The law judge also noted consultative examiner Dr.

-18-

Anand Rao's comment that there was "no evidence of depression or anxiety" (Tr. 15, see Tr. 580).

Further, the law judge noted that the plaintiff did not exhibit any mental difficulties during her interviews with Social Security representatives regarding her claim (Tr. 18; see Tr. 277 (the Social Security representative observed that the plaintiff "was polite and she was able to answer all of my questions. She was alert and well prepared for the interview")). He also considered that the plaintiff's daily activities, such as taking general household management classes and handling the family finances, were inconsistent with disabling mental symptoms (see Tr. 11-13, 20). Moreover, the law judge noted the opinions of non-examining psychological reviewers, who opined that the plaintiff's mental health records did not reflect disabling impairments (Tr. 20; Tr. 612-614, 898). See 20 C.F.R. 404.1527(e)(2), 416.927(e)(2) (state agency consultants are experts in Social Security disability evaluation and the adjudicator must consider their opinions). Notably, one reviewing psychologist concluded, like the law judge, that the treating provider's (Dr. Rao) statement that the plaintiff was unable to perform substantial gainful activity was not given weight because it was

"unsupported by treatment course/progress notes" and the plaintiff's and third party's function reports (Tr. 894).

The plaintiff, in arguing that the record supports Dr. T.D. Rao's opinion that she is unable to work, primarily relies upon Dr. Anand Rao's comment that that the plaintiff has a "significant [mental] disability" (Doc. 17, pp. 21-22; Tr. 580). This vague opinion is in stark contrast to Dr. Anand Rao's mental status examination of the plaintiff, in which he found that the plaintiff "is oriented to person, place and time .... cooperative [with] no evidence of depression or anxiety noted" (Tr. 580; see also Tr. 579 (Dr. Rao noting that the plaintiff was "alert, oriented and pleasant")).[5] However, the law judge reasonably discounted Dr. Rao's opinion of mental disability and, consequently, the law judge was not required to consider it.[6] The plaintiff

_____

[5]The comment is also tentative, as Dr. Rao adds that "[a] psychiatric evaluation should be done regarding [the plaintiff's] depression" (Tr. 580).

[6]In this connection, the plaintiff quibbles with the law judge's well-supported rejection of Dr. Anand Rao's conclusory and vague opinion that the plaintiff "has a significant disability due to her depression and anxiety" (Tr. 580). As the law judge noted, the opinion of a one-time examining consultant is not entitled to the same weight as a treating physician (Tr. 19). See Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1160 (11th Cir. 2004). Regardless, the law judge's explanation for rejecting Dr. Anand Rao's opinion states good cause for rejecting even the opinion of a treating physician. Thus, in addition to noting that Dr. Rao's opinion contradicts his mental status examination, the law judge considered that Dr. Rao's opinion is outside his expertise, opines on a vocational issue reserved to the Commissioner, and it is not consistent with the

also cites a comment by a urologist that the plaintiff was disorganized and opined that she had obsessive compulsive disorder (Doc. 17, p. 21). However, as stated above, p. 18, the circumstance that the plaintiff can identify some evidence supporting her argument does not compel the law judge to find her disabled and, in this case, there is ample evidence supporting the law judge's determination that the overall record does not show that the plaintiff is mentally disabled. In fact, the plaintiff's reliance upon comments from doctors who are not mental health specialists underscores the weakness of her position. Therefore, this contention fails.

Finally, the plaintiff argues that the law judge's decision should be reversed because he did not state with particularity the weight he gave Dr. Rao's opinion (id., p. 22). This contention is meritless. As indicated, the law judge stated that he declined to give Dr. Rao's opinion controlling weight (Tr. 18). Moreover, the law judge expressly said he found Dr. Rao's opinion "less than persuasive" (id.).

---

record as a whole (Tr. 19). The plaintiff's challenge to this finding (Doc. 17, p. 21) completely fails to undermine the law judge's explanation.

B. The plaintiff's second argument is that the law judge "did not properly consider the effects of fibromyalgia on [the plaintiff's] problems" (Doc. 17, p. 22). However, the law judge notes in the decision the plaintiff's diagnosis of fibromyalgia, and her testimony that fibromyalgia causes her pain (Tr. 13-14, 16). Further, the law judge found that the plaintiff's fibromyalgia is a severe impairment so that it "place[s] restrictions on the claimant's ability to engage in work activity" (Tr. 10, 11).

Notably, "[f]ibromyalgia is a rheumatic disease and the relevant specialist is a rheumatologist." Sarchet v. Chater, 78 F.3d 305, 307 (7th Cir. 1996). Here, the record does not contain a diagnosis of fibromyalgia by a rheumatologist; the diagnosis was made by the plaintiff's pain management doctor (see Tr. 825). Regardless, the law judge accepted the diagnosis of fibromyalgia and found that it was a severe impairment. Moreover, the law judge found that the plaintiff's combination of impairments limited her to a range of light work (Tr. 12-13).

The law judge, in concluding that greater physical restrictions limitations were not warranted, explained that the plaintiff's treatment was conservative and that it controlled her symptoms (Tr. 16, 17, 20).

Furthermore, the law judge found that the plaintiff described daily activities that are not consistent with disabling impairments (Tr. 20). The plaintiff does not identify, and certainly does not argue for, any additional functional limitations from fibromyalgia that should have been included in the residual functional capacity. In this respect, "a diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work." Wind v. Barnhart, 133 Fed. Appx. 684, 690 (11th Cir. 2005) (quoting McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986)). In other words, it is the functional limitations that determine disability. Moore v. Barnhart, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005); McCruter v. Bowen, supra. Here, the plaintiff makes no effort to show how her fibromyalgia creates a specific functional limitation beyond the law judge's residual functional capacity. Furthermore, the record does not contain any physician's opinion of greater functional limitations due to fibromyalgia. Thus, any disabling limitations would be premised upon the plaintiff's subjective complaints. However, the law judge found those complaints not fully credible, and the credibility finding is not challenged. See Sarchet v.

Chater, supra, 78 F.3d at 307 ("Some people may have such a severe case of fibromyalgia as to be totally disabled from working ... but most do not"). Therefore, the law judge reasonably concluded that the plaintiff's fibromyalgia did not preclude her from performing the range of light work reflected by the residual functional capacity.

The crux of the plaintiff's argument is that the law judge improperly "reject[ed] her allegations of pain because of lack of objective findings" (Doc. 17, p. 23). In this connection, the plaintiff cites to caselaw holding that it is improper to reject claims of disabling limitations caused by fibromyalgia solely because objective evidence is absent. Moore v. Barnhart, supra, 405 F.3d at 1211 (the hallmark of fibromyalgia is a lack of objective evidence). However, that error did not occur here.

The plaintiff bases this contention on the law judge's statement that "objective clinical studies and diagnostic testing have generally revealed no more than mild-to-moderate findings" (Doc. 17, p. 23, citing Tr. 17). However, this statement encompasses reasons for generally discounting the plaintiff's allegations of disabling pain from several impairments, including shoulder and back pain, lumbalgia, and intervertebral disc disorder (Tr. 15,

16), the severity of which are confirmed partly by objective evidence. Consequently, to the extent the law judge discussed objective findings, that was appropriate. Furthermore, as stated above, the law judge also set forth valid reasons for discounting the plaintiff's allegations of fibromyalgia, such as the conservative nature of her treatment, the effectiveness of medication in controlling her symptoms, and her daily activities.

C. The plaintiff's final contention is that the law judge ignored the plaintiff's diagnosis of interstitial cystitis (Doc. 17, p. 24). This argument is also meritless.

Consistent with the record, the law judge noted in the decision that the plaintiff has "a history of recurrent urinary tract infections (UTIs)" (Tr. 11; see, e.g., Tr. 420, 596, 667). Further, he considered that evidence, and explained that he found the condition was nonsevere because "the evidence does not establish that [it] cause[s] the claimant more than minimal difficulties with her ability to perform basic work activities" (Tr. 11). The plaintiff does not challenge that finding. It was subsequently opined that those symptoms were caused by interstitial cystitis, which is a chronic inflammation of the bladder wall (see Doc. 17, p. 24, n.5). The plaintiff's

-25-

half-page argument does not explain how the law judge's evaluation of the severity of the UTIs does not also cover the interstitial cystitis diagnosis, which, as indicated, was based upon the same symptoms as the UTI.

Furthermore, as previously explained, a mere diagnosis of an impairment is not sufficient to establish disability. Rather, it is necessary to show functional limitations from the impairments. The plaintiff's reference to interstitial cystitis does not demonstrate how it created any functional limitations beyond the law judge's residual functional capacity during the relevant period. See Moore v. Barnhart, supra, 405 F.3d at 1213 n. 6; McCruter v. Bowen, supra. Therefore, this contention is also unpersuasive.

It is, therefore, upon consideration

ORDERED:

That the decision of the Commissioner is hereby **AFFIRMED**. The Clerk is directed to enter judgment accordingly and to **CLOSE** this case.

DONE and ORDERED at Tampa, Florida, this 27ᵗʰ day of February, 2015.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE